DeARCY HALL, J.

DMP:AAS:JMH
F. #2017R01525

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y

★ MAR 1 0 2020 ★

BROOKLYN OFFICE

POLLAK, M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

NAUSHAD KHAN,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

127

CR 20

Cr. No.

(T. 18, U.S.C., §§ 371, 982(a)(1),
982(a)(2), 982(b)(1), 1349, 1956(h) and
3551 et seq.; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.      The Defendant and His Company

        1.      The defendant NAUSHAD KHAN was a resident and citizen of

Pakistan.

        2.      The defendant NAUSHAD KHAN owned and operated a company (the

"Arms Distributorship") based in Peshawar, Pakistan, that distributed firearms, ammunition

and other military equipment.

II.     The Victim Financial Institutions

        3.      Financial Institution 1, an entity the identity of which is known to the

Grand Jury, was a multinational banking and financial services company that operated

subsidiaries throughout the world, including in the United States.   Its United States-based

subsidiary ("U.S. Subsidiary 1"), an entity the identity of which is known to the Grand Jury,

was a federally chartered bank, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").   Among the services offered by Financial Institution 1 to its clients were U.S.-dollar clearing through U.S. Subsidiary 1 and other financial institutions located in the United States.

4.      Financial Institution 2, an entity the identity of which is known to the Grand Jury, was a multinational banking and financial services company that operated subsidiaries throughout the world, including in the United States.   Its United States-based subsidiary ("U.S. Subsidiary 2"), an entity the identity of which is known to the Grand Jury, was a federally chartered bank, the deposits of which were insured by the FDIC.   Among the services offered by Financial Institution 2 to its clients were U.S.-dollar clearing through U.S. Subsidiary 2 and other financial institutions located in the United States.

5.      Financial Institution 3, an entity the identity of which is known to the Grand Jury, was a multinational banking and financial services company that operated subsidiaries throughout the world, including in the United States.   Its United States-based subsidiary ("U.S. Subsidiary 3"), an entity the identity of which is known to the Grand Jury, was a federally chartered bank, the deposits of which were insured by the FDIC.   Among the services offered by Financial Institution 3 to its clients were U.S.-dollar clearing through U.S. Subsidiary 3 and other financial institutions located in the United States.

6.      Financial Institution 4, an entity the identity of which is known to the Grand Jury, was a U.S.-based federal credit union, the deposits of which were insured by the National Credit Union Administration.   Financial Institution 4 principally offered consumer banking services to its clients.

III.     The Fraudulent Scheme

7.     In operating the Arms Distributorship, the defendant NAUSHAD

KHAN, together with others, served as a broker for numerous transactions with companies

located outside Pakistan involving firearms, ammunition and other military equipment.   In

order to effect payment for some of these purchases, the defendant and his co-conspirators

sent, or caused to be sent, numerous wire transfers passing through the United States.

8.     International wire payments passing through the United States were

generally executed via the secured communications services provided by the Society for

Worldwide Interbank Financial Telecommunication ("SWIFT") network, and the

communications underlying the actual payments were referred to as SWIFT messages.   U.S.

financial institutions processing U.S.-dollar clearing transactions regularly screened SWIFT

messages of international wire payments, to make certain that the U.S. financial institutions

were not executing transactions in violation of applicable law.   SWIFT messages that

indicated that the underlying international wire payments were related to firearms,

ammunition or military equipment were subject to enhanced scrutiny, in light of the potential

for illegal activity.   U.S. financial institutions sometimes refused to process international

wire payment requests related to firearms, ammunition or military equipment.

9.     Under the Bank Secrecy Act, U.S. financial institutions were also

required to file suspicious activity reports ("SARs"), pursuant to Title 31, United States

Code, Sections 5311 et seq., and regulations promulgated thereunder.   For example, Title

12, Code of Federal Regulations, Section 21.11 required U.S. financial institutions to file

SARs "no later than 30 calendar days after the date of the initial detection of facts that may

constitute a basis for filing a SAR" "with the appropriate Federal law enforcement agencies

and the Department of the Treasury" regarding transactions aggregating more than $5,000 "that involve potential money laundering or violate the Bank Secrecy Act."

10.     In order to conceal the nature of the underlying transactions and thus increase the likelihood of success of the requested international wire payments passing through the United States, the defendant NAUSHAD KHAN, together with others, provided false and misleading descriptions of the underlying commodities in the SWIFT messages. For example, instead of indicating that certain U.S.-dollar clearing transactions related to firearms, ammunition and other military equipment, the defendant and his co-conspirators identified the underlying commodities in terms that would avoid triggering scrutiny of the transactions, such as "camping tents" and "BMX Bicycle Parts," among other false and misleading descriptions.   Relying on these misrepresentations, financial institutions operating in the United States, including U.S. Subsidiary 1, U.S. Subsidiary 2 and U.S. Subsidiary 3, processed KHAN's U.S.-dollar clearing transactions, some of which passed through the Eastern District of New York.

11.     For example, in or about and between January 2011 and August 2011, the defendant NAUSHAD KHAN, together with others, sent or caused to be sent multiple wire transfers aggregating approximately $800,000 that were processed by U.S. Subsidiary 1 in which the true purposes of the transactions—purchases of firearms, ammunition and military equipment—were concealed in the SWIFT messages.   In the SWIFT messages, the co-conspirators falsely indicated that the purposes of the transactions were for "Pipe Fitting" and "Sundry Goods."

12.     Similarly, in or about and between June 2015 and December 2015, the defendant NAUSHAD KHAN, together with others, sent or caused to be sent multiple wire

transfers aggregating approximately $236,000 that were processed by U.S. Subsidiaries 1 and 2, for deposit into accounts held at Financial Institution 4, in which the true purposes of the transactions—purchases of firearms, ammunition and military equipment—were concealed in the SWIFT messages. In the SWIFT messages, the co-conspirators falsely indicated that the purposes of the transactions were "IMPORT OF CAMPING TENTS."

13.    Similarly, in or about September 2015, the defendant NAUSHAD KHAN, together with others, sent or caused to be sent a wire transfer in the value of $79,925 that was processed by U.S. Subsidiary 3 in which the true purpose of the transaction—a purchase of firearms—was concealed in the SWIFT message. In the SWIFT message, the co-conspirators falsely indicated that the purpose the transaction was "IMPORT OF BICYCLE PARTS."

14.    Similarly, in or about and between March and April 2016, the defendant NAUSHAD KHAN, together with others, sent or caused to be sent a wire transfer in the value of $79,935 that was processed by U.S. Subsidiary 2 in which the true purpose of the transaction—a purchase of firearms and ammunition—was concealed in the SWIFT message. In the SWIFT message, the co-conspirators falsely indicated that the purpose of the transaction was "IMPORT OF ROTARY HAMMERS," a handheld tool similar to a drill.

15.    As a result of these fraudulent and false indications of the purposes of the transactions, U.S. Subsidiary 1, U.S. Subsidiary 2 and U.S. Subsidiary 3 processed transactions that they otherwise would have scrutinized and potentially halted, and did not file SARs that accurately reflected the true nature of the transactions.

16.    To facilitate the transactions involving purchases of firearms, ammunition and military equipment, and the use of the international wire transfers, the

defendant NAUSHAD KHAN, together with others, sent and caused to be sent numerous email communications.   Some of these email communications passed through the Eastern District of New York.

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

17.     The allegations contained in paragraphs one through 16 are realleged and incorporated as if fully set forth in this paragraph.

18.     In or about and between 2011 and 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NAUSHAD KHAN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more financial institutions, and to obtain money and property from said financial institutions, by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
### (Conspiracy to Commit Bank Fraud)

19.     The allegations contained in paragraphs one through 16 are realleged and incorporated as if fully set forth in this paragraph.

20.     In or about and between 2011 and 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NAUSHAD KHAN, together with others, did knowingly and intentionally conspire to

execute a scheme and artifice to defraud one or more financial institutions, and to obtain

moneys, funds, credits and other property under the custody and control of said financial

institutions, by means of one or more materially false and fraudulent pretenses,

representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT THREE
(Money Laundering Conspiracy)

21.     The allegations contained in paragraphs one through 16 are realleged

and incorporated as if fully set forth in this paragraph.

22.     In or about and between 2011 and 2016, both dates being approximate

and inclusive, within the Eastern District of New York and elsewhere, the defendant

NAUSHAD KHAN, together with others, did knowingly and intentionally conspire to

transport, transmit and transfer monetary instruments and funds, to wit: wire transfers, from

one or more places in the United States to and through one or more places outside the United

States, with the intent to promote the carrying on of specified unlawful activity, to wit: wire

fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation

of Title 18, United States Code, Section 1344, all contrary to Title 18, United States Code,

Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNT FOUR
(Conspiracy to Violate the Bank Secrecy Act)

23.     The allegations contained in paragraphs one through 16 are realleged

and incorporated as if fully set forth in this paragraph.

24.     In or about and between 2011 and 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NAUSHAD KHAN, together with others, did knowingly and willfully conspire to cause one or more financial institutions to fail to file one or more suspicious activity reports, contrary to Title 31, United States Code, Sections 5311 et seq.

25.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant NAUSHAD KHAN, together with others, did commit and cause the commission of the following:

## OVERT ACTS

a.     In or about June 2015, KHAN and his co-conspirators caused the sending of a SWIFT message to U.S. Subsidiary 2, pertaining to a $34,745 partial payment for the purchase of handguns and magazines that falsely stated that the transaction involved "IMPORT OF CAMPING TENTS."

b.     In or about September 2015, KHAN and his co-conspirators caused the sending of a SWIFT message to U.S. Subsidiary 3, pertaining to a $79,925 payment for the purchase of assault rifles that falsely stated that the transaction involved "IMPORT OF BICYCLE PARTS."

c.     In or about October 2015, KHAN and his co-conspirators caused the sending of a SWIFT message to U.S. Subsidiary 1, pertaining to a $19,444 partial payment for the purchase of handguns and magazines that falsely stated that the transaction involved "IMPORT OF CAMPING TENTS."

d.     In or about December 2015, KHAN and his co-conspirators caused the sending of a SWIFT message to U.S. Subsidiary 2, pertaining to a $43,700 partial

payment for the purchase of handguns and magazines that falsely stated that the transaction involved "IMPORT OF SPORTING PRODUCTS."

        e.      In or about March and April 2016, KHAN and his co-conspirators caused the sending of a SWIFT message to U.S. Subsidiary 2 pertaining to a $79,935 payment for the purchase of firearms and ammunition that falsely stated that the transaction involved "IMPORT OF ROTARY HAMMERS."

        (Title 18, United States Code, Sections 371 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE AND TWO

        26.      The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts One or Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offenses, to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

        27.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT THREE

28.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

29.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. O.136

F.#: 2017R01525
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN District of NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

vs.

NAUSHAD KHAN,

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 982(a)(1), 982(a)(2), 982(b)(1), 1349, 1956(h) and 3551 et seq.; T. 21, U.S.C., § 853(p))

_____
A true bill.

_____ Foreperson

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____ Clerk

Bail, $ _____

_Alexander A. Solomon & J. Matthew Haggans, Assistant U.S. Attorneys (718) 254-6074 / (718) 254-6127_